# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CABLE NEWS NETWORK, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **CENTRAL INTELLIGENCE AGENCY**, <br><br> Defendant. | Civil Action No. 21-00733 (TSC) |

## MEMORANDUM OPINION

Plaintiff Cable News Network ("CNN") has sued Defendant the Central Intelligence Agency ("CIA" or "Agency") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. CNN seeks to obtain the CIA's records relating to James Joseph Brown. Compl., ECF No. 1. The CIA has moved for summary judgment. Mot. for Summ. J., ECF No. 14. CNN opposed and cross-moved for summary judgment. Cross-Mot. for Summ. J., ECF No. 15. For the reasons stated below, the court will GRANT Defendant's Motion for Summary Judgment and DENY Plaintiff's Cross-Motion for Summary Judgment.

### I.   BACKGROUND

The following facts are undisputed. On December 6, 2019, CNN submitted a FOIA request "seeking all records in the CIA's files that relate to Brown." Compl. ¶ 23, ECF No. 1. On March 19, 2021, CNN filed a complaint against the CIA, alleging that the CIA violated FOIA by failing to respond to CNN's request within the statutory deadline of 20 working days after receiving the request. Compl. ¶¶ 34-39; *see* 5 U.S.C. § 552(a)(6)(A)(i). The CIA issued its final response to CNN's FOIA request on July 16, 2021, including a *Glomar* response indicating that

"the CIA could neither confirm nor deny the existence or nonexistence of records responsive to the request, as the fact of the existence or nonexistence of records was properly classified and protected from disclosure under FOIA Exemptions (b)(1) and (b)(3)." Statement of Material Facts (SOMF), ECF No. 14-2 at ¶ 9.

## II.   LEGAL STANDARD

Summary judgment should be granted if the movant successfully shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). If an agency claims that the responsive records are exempted from FOIA disclosure, that agency "bears the burden of proving the applicability of claimed exemptions." *Am. Civil Liberties Union v. U.S. Dept. of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). Agencies can establish the applicability of the FOIA exemptions by affidavit, and the court must grant summary judgment in favor of the agency if the affidavits "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dept. of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

An agency "may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Gardels v. CIA*, 689

F.2d 1100, 1103 (D.C. Cir. 1982). Such an agency response is known as a *Glomar* response and an agency seeking to justify a *Glomar* response to a FOIA request must "demonstrate that acknowledging the mere existence of responsive records would disclose exempt information." *Electronic Privacy Information Center v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012). In FOIA cases involving national security, the court "accord[s] substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Larson*, 565 F.3d at 864 (citation omitted).

### III.  ANALYSIS

In its final response letter, the CIA stated that it did not locate any responsive records that "would reveal an openly acknowledged CIA affiliation with the subject" and issued a *Glomar* response refusing to confirm or deny the existence of any responsive records that "would reveal a classified association between the CIA and the subject." CIA Final Response Letter – Exhibit E, ECF No. 14-3. CNN did not challenge the adequacy of the CIA's response in the first part, so the court treats this argument as conceded and will address only whether the Agency's *Glomar* response is justified. *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

#### A.  Exemption 1

Exemption 1 authorizes agencies to withhold responsive records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here the CIA invokes Executive Order No. 13526, Mot. for Summ. J. at 9, which provides that information is properly classified if "(1) an original

3

classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the United States Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." Executive Order No. 13526 § 1.1(a).

The parties do not dispute that the information was classified by an original classification authority or that it is under the control of the United States government. The CIA claimed that the existence or nonexistence of responsive records concerning Brown falls within two categories listed in section 1.4: "intelligence activities (including covert action), intelligence sources or methods, or cryptology" (*id.* § 1.4(c)) and "foreign relations or foreign activities of the United States" (*id.* § 1.4(d)). Blaine Decl. ¶ 22, ECF No. 14-3. And as the original classification authority, the CIA contends that disclosing or even acknowledging the existence of the information CNN seeks could jeopardize national security. *Id.*

An agency's justification for invoking a *Glomar* response is sufficient if it appears "logical" or "plausible." *See Gardels*, 689 F.2d at 1105. In *Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007), the CIA refused to disclose whether it had records regarding an assassinated Colombian presidential candidate. *Id.* at 372-73. The CIA submitted an affidavit explaining that confirming or denying such records would "seriously damage this nation's credibility with all other current intelligence sources" and "signal to a foreign intelligence service the specific persons and areas in which the CIA is interested and upon which it focuses its methods and resources." *Id.* at 376 (citation omitted). The D.C. Circuit found this explanation logical and plausible. *Id.* at 377; *cf. CNN v. FBI*, 384 F. Supp. 3d 19, 35 (D.D.C. 2019) (rejecting "[a] mere assertion that the harm is

4

'logical' or 'plausible'" as "the type of 'conclusory' statement that falls short of the FBI's minimal burden" of justifying its exemption claim).

Unlike the affidavit in *CNN v. FBI*, the CIA's affidavit did not merely repeat the language in the statute and the executive order. As in *Wolf*, the CIA explained in sufficient detail the potential damage to its use and maintenance of human intelligence sources if it does not issue a *Glomar* response. The CIA stated that disclosing whether it maintained a classified association with Brown would "jeopardize the clandestine nature of the Agency's intelligence activities or otherwise reveal previously undisclosed information about CIA sources, capabilities, authorities, interests, relationships with domestic or foreign entities, strengths, weaknesses, and/or resources." Blaine Decl. ¶ 23. The Agency explained that its intelligence activities "must remain secret in order to be effective." *Id*. Specifically, if Brown were a "confidential source or a target of collection," disclosing that information would "expose Agency tradecraft, other human sources, and specific intelligence interests and activities." *Id*. ¶ 24. Such a disclosure would not only "place[] in jeopardy every individual with whom [Brown] has had contact," but would also undermine other human sources' confidence in the Agency's promise of confidentiality. *Id*. The Agency further explained that even if it had no association with Brown, it would still have to issue a *Glomar* response, because if "the CIA were to invoke a [*Glomar*] response only when it actually possessed responsive records, the [*Glomar*] response would be interpreted as an admission that responsive records exist" and therefore become meaningless. *Id*. ¶ 25. CNN characterizes the CIA's justification of the *Glomar* response as "speculative and boilerplate assertions." Cross-Mot. for Summ. J. at 12, ECF No. 15. The court disagrees.

CNN points out that *Wolf* concerned a foreign national, while this case involves the CIA's records about a U.S. citizen. Pl. Reply at 6, ECF No. 20. CNN, however, fails to identify any authority setting a different standard for *Glomar* responses concerning foreign nationals than those concerning U.S. citizens. To the contrary, the D.C. Circuit has repeatedly held that the CIA's domestic intelligence activities are entitled to the same level of protection as its foreign ones. *See Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (holding that "the protection of [the National Security Act of 1947] and Exemption 3 [of the FOIA] extends to all intelligence sources, domestic and as well as foreign"); *see also Gardels*, 689 F.2d at 1105 (finding that revealing or acknowledging the CIA's covert contacts with the University of California "might very well disclose some sources or methods of foreign intelligence" and accepting the agency's judgment). Consequently, the court declines to scrutinize the CIA's *Glomar* response more strictly simply because the subject is a U.S. citizen.

Lastly, CNN contends that the CIA has waived its right to issue a *Glomar* response because its intelligence interest in Brown has already been officially acknowledged. Cross-Mot. for Summ. J. at 13 ("it strain[s] credulity here for the CIA to suggest that it never had so much as an "interest in" James Brown" (citing *Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 430 (D.C. Cir. 2012))). For an item of information to be officially acknowledged, "it must satisfy three criteria: (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *Am. Civil Liberties Union*, 628 F.3d at 620-21.

CNN points to various sources suggesting that the U.S. intelligence community maintained a mass surveillance program over prominent African-American leaders, and that

Brown was a leading figure in the civil rights movement. Cross-Mot. for Summ. J. at 13. But CNN cites no source directly establishing that the CIA has surveilled or otherwise maintained an intelligence interest in Brown, so the court cannot conclude that the *specific* information sought has been disclosed. Furthermore, while CNN points to court opinions, Congressional reports, FBI activities and commentaries, it cites no statement made by the CIA or its officers disclosing or acknowledging its activities regarding Brown. *Id.* Because "only the CIA can waive its right to assert an exemption to the FOIA," *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999), the court concludes that the CIA's right to issue a *Glomar* response here has not been waived. Accordingly, the CIA's *Glomar* response is justified under FOIA Exemption 1.

### B. Exemption 3

Exemption 3 protects information that is specifically exempted from disclosure by statute. 5 U.S.C. § 552(b)(3). Under that exemption, the CIA need only show that the statute claimed is one of exemption as contemplated by Exemption 3 and that the withheld material falls within the statute. *Fitzgibbon*, 911 F.2d at 761–62. Here, the CIA invokes the National Security Act of 1947, which requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." Mot. for Summ. J. at 12 (citing 50 U.S.C. § 3024(i)(1)). In *ACLU v. U.S. Dep't of Def.*, 628 F.3d at 619 (D.C. Cir. 2011) the D.C. Circuit "held that the National Security Act, which also authorizes the Executive to withhold 'intelligence sources and methods' from public disclosure, [] qualifies as an exemption statute under [E]xemption 3." Thus, the only remaining inquiry is whether the withheld material relates to intelligence sources and methods. *Fitzgibbon*, 911 F.2d at 762. "The Supreme Court gives even greater deference to CIA assertions of harm to intelligence sources and methods under the National Security Act." *Wolf*, 473 F.3d at 377 (finding that the CIA properly invoked Exemption

3 in support of its *Glomar* response where the Agency maintained that the existence or nonexistence of records about a foreign national was protected from disclosure under the National Security Act).

As previously discussed, the CIA's affidavit details how disclosing or acknowledging the existence of the information CNN seeks could reveal "clandestine CIA intelligence activities, sources, and methods."  Blaine Decl. ¶ 18.  And considering that the withheld information is covered by Exemption 1, the court need not go into greater detail here.  *Vento v. I.R.S.*, 714 F. Supp. 2d 137, 155 (D.D.C. 2010) (finding no need to consider the agency's Exemption 3 analysis, having found that "each of the documents in question are properly withheld under other exemptions").  In short, the CIA's *Glomar* response is also justified under FOIA Exemption 3.

## IV. CONCLUSION

For the reasons set forth above, the court will GRANT Defendant's Motion for Summary Judgment, ECF No. 14, and DENY Plaintiff's Cross-Motion for Summary Judgment, ECF No. 15.

Date: September 19, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge